UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Justin Filip,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Anaplan, Inc.,<br><br>　　　　Defendant. | Case. No. _____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Justin Filip, ("Filip" or "Plaintiff"), for his Complaint against Defendant Anaplan, Inc., ("Anaplan" or "Defendant"), states and alleges as follows:

## INTRODUCTION

1. Filip is a former resident of the State of Minnesota who currently resides in Austin, Texas. Filip is a former employee of Anaplan.

2. Anaplan is a Delaware Corporation with its principal place of business located at 50 Hawthorn Street, San Francisco CA 94105. Anaplan does business in, and has a physical presence in, the State of Minnesota, with a local address of 300 1st Avenue North, Minneapolis MN 55401. Anaplan is engaged in the business of software development and engineering.

3. Filip brings this action for discrimination, reprisal and wrongful discharge based on Anaplan's imposition of a discriminatory and racist employee training program, in contravention of federal and state law as outlined below, and upon Filip's opposition to said training program.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action raises claims involving United States statutes, and pursuant to 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. This Court further has supplementary jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Anaplan because it does business in and has a physical presence in the State of Minnesota.

6. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in whole, or in part, in Hennepin County, Minnesota, and Defendant Anaplan conducts business in the State of Minnesota.

## BACKGROUND

7. Filip was hired by Anaplan in its Minneapolis office on or about August 8, 2017 as a Product Support Analyst. This was primarily a customer-support position. During the next two years, Filip's performance was exemplary, and he received sterling performance reviews. As a result of his performance, Filip was promoted in August of 2019 to the position of Insights and Operations Analyst, which involved work in Anaplan's operational segment, including Integrations, Data Transformations, ETL programming and data modeling through Anaplan's proprietary data operation.

8. At the start of the COVID-19 pandemic, Anaplan increasingly began working remotely, and Filip worked from his home. During this time, he continued to socialize with current and former Anaplan employees. During one group chat among current and former Anaplan employees, the friends discussed purchasing guns together. Several of the current and former Anaplan employees did, in fact, visit a local Fleet Farm retailer together and purchased firearms. At that time, Filip purchased a single-shot, bolt-action shotgun with a small (two shell) magazine. Later, a coworker asked him if she could pick him up anything more at the same retailer. Filip responded that if she would buy him a case for his new shotgun he would appreciate it.

9. On June 8, 2020, Anaplan's CEO Frank Calderoni conducted a company-wide conference call with employees. During the conference call Calderoni "acknowledged" his "White Privilege," stated that Caucasian people have a particular responsibility for racial relations, and that all those at Anaplan would be required to engage in a discussion of racial relations, racial justice, and racial reconciliation.

10. Later that day, Filip engaged his coworkers on the "Slack" intracompany communications channel. Relying on Anaplan policy and slogans which instructed that the foremost company ethics were "honesty," "openness" and "authenticity" (these slogans were published throughout Anaplan policies, and actually painted on the walls of the office), Filip decided to publish his views of the CEO's statements to his coworkers. In particular, Filip stated as follows:

> I am sad to see our CEO decide that during an especially confusing time in our history that the right idea would be to have a call with the entire company and essentially apologize for being white because he believes he has some

3

form of white privilege.  None of what is happening during the events of COVID-19 and the George Floyd murder has anything to do with anyone being white.  This is about justice between police and citizens, and abuse of power.  All Americans have equal rights and therefore equal opportunity.  I recognize there is a gap between opportunity and outcome for different races but the point of being an American over anything else is that it is up to the individual not to let things in their life victimize them or hold them back, and to achieve success in spite of those challenges.  I have my own story and struggles that completely and directly go against the idea of white privilege, and I won't stay silent anymore while the media continues to try and divide all of us.

11.     In response to the above comment and several shorter, follow-up comments, Filip was subjected to a barrage of negative comments from coworkers, in which he was called names (including being a "racist"), told he needed to educate himself, and had his own mental and psychological state questioned.

12.     The following day, Filip received a call from Employee Personnel Manager Laura Whitehead.  Whitehead initially told Filip that she was "high up" in the hierarchy at Anaplan, and that she only got involved if something was serious.  She began the conversation by asking Filip if he was involved in "QAnon," and whether he had been looking to purchase high-capacity magazines for his new shotgun.  Whitehead made other comments impugning Filip, and suggested that he was unstable.  She did concede though that Filip had not said anything she considered to be unethical, but stated that others would likely have trouble working with him because of his opinions.  Whitehead emphasized that Filip's comments on the Slack channel were unacceptable because of their content, that Anaplan disapproved of his viewpoints regarding racial relations, and that he would be subject to discipline in the future for expressing such opinions.

13. In response to these allegations and instructions, Filip stated that he believed that some of the discussion and comments from the CEO, as well as the Slack channel discussion, consisted of racist and stereotyping tropes. He further indicated that he disagreed with many of the statements that had been made, and was attempting to engage in discussion on these topics with his coworkers. Filip went on to state that the racially-tinged viewpoints being expressed seemed to be official policy of Anaplan, and that he felt compelled both morally and legally to express his disagreement. Despite all of these sentiments, Filip agreed that he would refrain from such statements in the future, but only so long as others at Anaplan did not post racist comments.

14. The following day, June 10, 2020, Anaplan's Minneapolis Office Coordinator Chance Wellnitz posted a suggested reading list for all employees that included "White Fragility" by Robin D'Angelo, "How to be an Anti-Racist" by Ibram X. Kendi and "Me and White Supremacy: Combat Racisms, Change the World and Become a Good Ancestor" by Layla F. Saad. This post by Wellnitz was followed by numerous comments from other employees discussing white supremacy and race relations.

15. In response to the above racially-provocative postings, and because he believed there was a racist component to many of the comments, Filip again engaged his coworkers on Slack, by stating, among other things:

> Good god, you really don't see how this narrative characterizes an entire race as having an inability to talk about racism, and once again, on the back of actually legitimate social movement (BLM, police reform), is pointing blame at that entire race? Come on.
>
> * * *

>Assuming white people in general are ignorant AND damaging others simply by being white?
>
>* * *
>
>Someone posted an article the other day that was incredibly condescending: "https://ti.to.kim.crayton.llc/introduction-to-being-an-antiracist "this is your chance to learn the basics of being an Antiracist, **_while minimizing the potential for harm your whiteness has on others_**, as you learn."
>
>* * *
>
>*God bless every single person in this company*, and a special thanks to the support and the conversation within direct messages, have a great day.

(emphasis added.)

16. The following morning, on June 11, 2020, Whitehead again met (remotely) with Filip and terminated his employment because of the content of his posts to the "open" and "authentic" Slack channel. She advised him that the "stakeholders" of the company no longer had confidence in his ability to keep his comments within what the company believed to be acceptable political opinion.

## FIRST CAUSE OF ACTION

### Racial Discrimination and Retaliation under the Minnesota Human Rights Act

17. Filip restates and realleges paragraphs 1 through 16 as if fully set-forth here.

18. Defendant Anaplan is an "employer" within the meaning of the Minnesota Human Rights Act, Minn. Stat. § 363A.03, Subd. 16.

19. At all times relevant, Filip was an "employee" of Anaplan within the meaning of the Minnesota Human Rights Act, Minn. Stat. § 363A.03, Subd. 15.

20. The Minnesota Human Rights Act makes it illegal to retaliate or otherwise engage in adverse action against an employee for opposing a practice made illegal by the Act. Minn. Stat. § 363A.15(1).

21. When Filip stated his opposition to what he believed to be racist and discriminatory statements on the Anaplan's "open" and "authentic" Slack communication channel, he was disciplined and then terminated by Anaplan. Anaplan's termination of Filip was in retaliation for the substance of his statements concerning racist and racially-provocative statements being made by Anaplan, its executives and managers, and its employees.

22. Because of Anaplan's illegal conduct, Filip has suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees.

## SECOND CAUSE OF ACTION

**Racial Discrimination and Retaliation under the Civil Rights Act of 1964**

23. Filip restates and realleges paragraphs 1 through 22 as if fully set-forth here.

24. At all times relevant, Anaplan employed at least fifteen employees, and thus was an "employer" for purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

25. At all times relevant, Filip was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).

26. 42 U.S.C. § 2000e-3(a) makes it illegal to retaliate against or otherwise discriminate against an employee for opposing any practice made unlawful by Title VII of the Civil Rights Act of 1964.

27. Anaplan's actions in disciplining and ultimately discharging Filip because of his opposition to the opinions being expressed on racial issues at Anaplan constitutes retaliation, reprisal and discrimination.

28. Because of Anaplan's illegal conduct, Filip has suffered economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees.

## THIRD CAUSE OF ACTION

### Wrongful Termination

29. Filip restates and realleges paragraphs 1 through 28 as if fully set-forth here.

30. There exists in Minnesota a clear and well-established public policy against racist policies and practices in employment.

31. At the time Filip was forced to participate in Anaplan's racially-based company-wide presentations, he had a good-faith and well-established belief that such training, behavior and language was both legally and morally wrong.

32. Because Filip voiced his opposition to Anaplan's racially-based training, language, and culture, he was discriminated against and ultimately terminated from his employment.

33. Anaplan's actions in disciplining and subsequently terminating Filip constitutes retaliation in violation of Minnesota Public Policy.

34. As a result of Anaplan's illegal retaliation against Filip, Filip has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees.

## FOURTH CAUSE OF ACTION

## Political Reprisal Under Minn. Stat. § 10A.36

35. Filip restates and realleges paragraphs 1 through 34 as if fully set forth here.

36. Minn. Stat. §10A.36 forbids an "association" from "engag[ing] in economic reprisals or threaten[ing] loss of employment…against an individual or association because of that individual's or association's political contributions or political activity….An individual or association that violates this section is guilty of a gross misdemeanor."

37. Anaplan is an "association" under Minn. Stat. §10A.01, Subd. 6, which includes any "group of two or more persons, who are not all members of an immediate family, acting in concert."

38. Under Minn. Stat. §10A.34, "[a] person charged with a duty under this chapter is personally liable for the penalty for failing to discharge it." Among the duties set forth in Chapter 10A is the duty not to retaliate against an employee for political activity, as quoted above.

39. Filip engaged in political activity by stating his opposition to what he believed to be racist and discriminatory statements on Anaplan's "open" and "authentic" Slack communication channel.

9

40. Anaplan engaged in an economic reprisal and terminated Filip's employment because of his political activity.

41. Anaplan is thus liable to Filip for the damages caused by its actions in terminating his employment, including reasonable costs and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Filip prays for judgment in his favor and against Defendant Anaplan, and for an Order of the Court as follows:

1. Adjudging that Defendant is liable to Plaintiff for his actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Awarding Plaintiff his costs, attorney fees and any other relief permitted by statute; and

3. Awarding such other relief as the Court may deem just and equitable.

Dated: September 20, 2021                    **UPPER MIDWEST LAW CENTER**

                                                                                     */s/ James V. F. Dickey*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
8421 Wayzata Boulevard, Suite 300
Golden Valley, MN 55426
(612) 428-7000
doug.seaton@umwlc.org
james.dickey@umwlc.org

***Attorneys for Plaintiff Justin Filip***